United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                              Case No. 20-CR-20037

v.

                              Hon. Stephen J. Murphy, III

Fares Yasin,

        Defendant.

_____/

**Plea Agreement**

The United States of America and the defendant, Fares Yasin, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

1. **Count of Conviction**

Defendant will plead guilty to Count One of the First Superseding Indictment, which charges him with conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347, 1349.

2. **Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

1

| Count 1 | Term of imprisonment: | Maximum of 10 Years |
|---------|----------------------|---------------------|
|         | Fine: | Maximum of $250,000 |
|         | Term of supervised release: | Maximum of 3 Years |

**3.      Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement and imposes sentence consistent with its

terms, the United States Attorney's Office for the Eastern District of Michigan will

move to dismiss any remaining charges in the indictment against the defendant in

United States v. Fares Yasin, Eastern District of Michigan case number 20-CR-

20037.

**4.      Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its

terms, the United States Attorney's Office for the Eastern District of Michigan will

not bring additional health care fraud charges or charges for conspiracy to possess

with intent to distribute and to distribute controlled substances for the conduct

reflected in the First Superseding Indictment.

**5.      The Elements of Count 1 are:**

> (1)    That two or more persons conspired, or agreed, to commit the crime
> of healthcare fraud, to wit: defendant knowingly and willfully
> executed a scheme and artifice to defraud a health care benefit
> program, to obtain, by means of false or fraudulent pretenses,

representations, or promises any of the money or property owned by or in the control of a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.

(2)   That two or more persons conspired, or agreed, to commit the crime of healthcare fraud, by knowingly devising a scheme or artifice to defraud a healthcare benefit program in connection with the delivery or payment of healthcare benefits, items or services and that Medicare is a federal benefit program affecting interstate commerce,

(3)   The scheme related to a material fact or included a material misrepresentation or concealment of a material fact.

(4)   The defendant had the intent to defraud.

A "health care benefit program" is any public or private plan or contract, affecting interstate commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

A "scheme or artifice to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations, or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as

3

half-truths and the knowing concealment of material facts.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension.

The good faith of the defendant is a complete defense to the charge of health care fraud. A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under this statute merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.

**6.   Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Dr. Fares Yasin is a medical provider who operated Michigan Home Visiting Physicians (MVHP) and Detroit Visiting Physicians (DVP). MHVP and DVP are medical practices located inside of 24418 Michigan Avenue in Dearborn, Michigan 48124. MHVP was incorporated by Dr. Fares Yasin on February 20, 2008. DVP was organized by Dr. Fares Yasin on August 13, 2007. MHVP and DVP were certified Medicare providers.

Upon enrolling in Medicare as a physician, Dr. Fares Yasin (on form CMS 855I) agreed to abide by the Medicare laws and not knowingly present a false or fraudulent claim for payment by Medicare. Medicare is a Federal benefit program and therefore affects interstate commerce. Moreover, Dr. Fares Yasin agreed that he would not submit claims with deliberate ignorance of their truth or falsity. Dr. Fares Yasin was, therefore, responsible for timely and accurate billing to Medicare under his name/NPI number while operating MVHP and DVP.

From January 1, 2015 to December 31, 2016 ("Suspension Period"), Dr. Fares Yasin's Medicare billing privileges were revoked by the Centers for Medicare and Medicaid Services from being able to bill Medicare. Dr. Fares Yasin had knowledge of this revocation because it was communicated to him in a letter that he personally received, read, understood and communicated to others he worked with.

Patient Billing during Suspension Period (January 1, 2015 – December 31, 2016). Despite being suspended from billing Medicare, Dr. Fares Yasin continued to see and treat Medicare patients and Medicare was in fact billed for such treatments. Specifically, Dr. Fares Yasin conspired and agreed with Drs. Nura Yasin and Ramon Madrid, whereby, that Dr. Fares Yasin would continue to see Medicare patients and Medicare would be billed for the patients' treatment(s) under the name/NPI number of Dr. Nura Yasin and/or Dr. Ramon Madrid. This

5

was a material misrepresentation to Medicare because Dr. Fares Yasin was

suspended from billing Medicare during his Suspension Period and he had full

knowledge that Medicare would not pay him for services while he was suspended

from billing Medicare. During the Suspension Period, Drs. Nura Yasin and Ramon

Madrid agreed to this billing arrangement with Dr. Fares Yasin.

At the time that Dr. Fares Yasin entered into the aforementioned billing

arrangement with Drs. Nura Yasin and Ramon Madrid, Dr. Fares Yasin:

1. knew that he was suspended from Medicare;

2. knew that he could not bill Medicare for services that he rendered;

3. knew he would receive payment from Medicare only by having the medical

services he provided billed under the names of Drs. Nura Yasin and/or Ramon

Madrid; and

4. knew that Drs. Nura Yasin and/or Ramon Madrid never or rarely treated any of

the Medicare patients that they billed but that only he treated during the

Suspension Period.

During the Suspension Period Medicare was in fact billed and Dr. Fares

Yasin did receive money from Medicare under the false representation that Drs.

Nura Yasin and/or Ramon Madrid were actually treating Medicare patients, which

he knew to be false. Moreover, Dr. Fares Yasin acted with the intent to circumvent

and bill Medicare during the entire Suspension Period by seeing Medicare patients that he knew and agreed would be billed by Drs. Nura Yasin or Ramon Madrid.

Based on the aforementioned facts, between January 1, 2015 and December 31, 2016 Dr. Yasin practiced medicine and his services were billed to Medicare by Drs. Norah Yasin and Ramon Madrid as if no Suspension Period existed. During this Suspension Period, Dr. Fares Yasin, MVHP and/or DVP were paid $925,313.06 by Medicare pursuant to such agreement.

The government agrees not to argue at sentencing that any medical services were not rendered as part of the billing plan during the Suspension Period as described above. The parties also stipulate that MVHP and/or DVP are located in the Eastern District of Michigan.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for defendant's guilty plea to the charges against him. It does not include all of the facts known to him concerning criminal activity in which he and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

### 7.    Advice of Rights

The defendant has read the indictment, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The

defendant understands that, by pleading guilty, he is waiving many important

rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the

court appoint counsel—at trial;

D.    The right to be presumed innocent and to require the government to

prove the defendant guilty beyond a reasonable doubt at trial;

E.    The right to confront and cross-examine adverse witnesses at trial;

F.    The right to testify or not to testify at trial, whichever the defendant

chooses;

G.    If the defendant chooses not to testify at trial, the right to have the jury

informed that it may not treat that choice as evidence of guilt;

H.    The right to present evidence or not to present evidence at trial,

whichever the defendant chooses; and

I.    The right to compel the attendance of witnesses at trial.

## 8.    Collateral Consequences of Conviction

The defendant understands that his conviction here may carry additional

consequences under federal or state law. The defendant understands that, if he is

not a United States citizen, his conviction here may require him to be removed

8

from the United States, denied citizenship, and denied admission to the United

States in the future. The defendant further understands that the additional

consequences of his conviction here may include, but are not limited to, adverse

effects on the defendant's immigration status, naturalized citizenship, right to vote,

right to carry a firearm, right to serve on a jury, and ability to hold certain licenses

or to be employed in certain fields. The defendant understands that no one,

including the defendant's attorney or the Court, can predict to a certainty what the

additional consequences of the defendant's conviction might be. The defendant

nevertheless affirms that the defendant chooses to plead guilty regardless of any

immigration or other consequences from his conviction.

## 9.     Safety Valve

The defendant understands that he will only qualify for the safety valve in 18

U.S.C. § 3553(f) if the Court finds at sentencing that he has satisfied *all* of the

requirements in § 3553(f). If the Court finds that the defendant has satisfied all of

those requirements, the Court may—but is not required to—sentence the defendant

below the mandatory minimum penalties that would otherwise apply on Count 1.

## 10.    Defendant's Guideline Range

### A.     Court's Determination

The Court will determine the defendant's guideline range at sentencing.

9

**B.     Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b).] If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

**C.     Other Guideline Recommendations**

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

| Guideline | Description | Level |
|---|---|---|
| § 2B1.1 | Health Care Fraud | 6 |
| § 2B1.1(b)(1) | Amount More Than $550,000 | 14 |
| § 3B1.3 | Abuse of position of trust or use of special skill | 2 |

The parties have no other recommendations as to the defendant's guideline calculation.

### D.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 13.B, 13.C, or 13.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### E.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 10.B, 10.C, or 10.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 11. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the top of the defendant's guideline range as determined by the Court.

#### 2. No Right to Withdraw

The government's recommendation in paragraph 11.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term

or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

**C.    Fines**

The parties have no agreement as to a fine.

**D.    Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. The victims and the full amounts of restitution in this case, are as follows: U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services, Medicare Trust Fund, $925,313.06.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial

Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### E.   Forfeiture

Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), and 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), any right, title, and interest, he may possess in property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violation of Count 1 of the Indictment, Conspiracy to Commit Health Care Fraud under 18 U.S.C. §§ 1347, 1349.

Defendant's agreement regarding forfeiture includes, but is not limited to, the forfeiture of all interest defendant has, or may have, in the following property, which defendant agrees constitutes proceeds of his violation of 18 U.S.C. §§ 1347, 1349, and is therefore subject to forfeiture to the United States:

    1)   Thirty-one Thousand, Four Hundred and Fourteen Dollars ($31,414.00) in U.S. Currency;

    2)   Ninety-three Thousand, Six Hundred and Thirty-six Dollars ($93,636.00) in U.S. Currency;

14

3) Eight Hundred, and Eighty-five Dollars and Seven Cents ($885.07) in funds from account #XXXXX2154 in the names of Fares and Ahmad Yasin at JP Morgan Chase Bank;

4) Two Thousand, Five Hundred and Fifty-Nine Dollars and Seventy-one Cents ($2,559.71) in funds from account #XXXXXX0629 in the name of Fares F. Yasin at JP Morgan Chase Bank;

5) Five Thousand, Seven Hundred and Ninety Dollars and Eight Cents ($5,790.08) in funds from account #XXXXX1591 in the name of Yasin Properties, LLC at JP Morgan Chase Bank;

6) Five Hundred and Twenty-One Dollars and Seventy-Seven Cents ($521.77) in funds from account #XXXXXX8114 in the name of Detroit Visiting Physicians, PLLC, at JP Morgan Chase Bank;

7) Thirty-Five Thousand, Nine Hundred and Eighty-Two Dollars and Sixty-four Cents ($35,982.64) in funds from account #XXXXXXXX8799 in the name of Yasin Medical P.C. at Bank of America;

8) Thirty-five Thousand and Twenty-one Dollars and Forty-seven Cents ($35,021.47) from account #XXXXXXXX2505 in the name of Yasin Medical P.C. at Bank of America;

9) Seventy-six Thousand, Eight Hundred and Seventy-nine Dollars and Sixty-one Cents ($76,879.61) in funds from account #XXXXX0820 in the name of Michigan Home Visiting Physicians LLC at JP Morgan Chase Bank;

10) Thirty-four Thousand, Two Hundred and Forty-one Dollars and Seventy-three Cents ($34,241.73) in funds from account #XXXXX1690 in the name of Detroit Visiting Physicians LLC at JP Morgan Chase Bank;

11) Twenty Thousand, One Hundred and Ninety-Six Dollars ($20,196.00) in funds from account #XXXXX3010 in the name of NFY, Inc., at JP Morgan Chase Bank;

12) Sixteen Thousand, Four Hundred and Thirty-Six Dollars and Ninety-One Cents ($16,436.91) in funds from brokerage account #XXXXXXXXXXXX2133 in the name of Dr. Nura Yasin at Ameriprise Financial;

13) One Thousand, Seven Hundred Ninety-Four Dollars and Twenty-Nine Cents ($1,794.29) from IRA account #XXXXXXXXXXXX5133 in the name of Dr. Nura Yasin at Ameriprise Financial;

14) Twelve Thousand, Two Hundred and Ninety-Two Dollars and
Forty-Five Cents ($12,292.45) in funds from SEP IRA account
#XXXXXXXXXXXX6133 in the name of Dr. Nura Yasin at
Ameriprise Financial.

These 14 assets, which total $367,651.73, are hereinafter referred to as the
"Subject Property."

Forfeiture Money Judgment: Defendant also agrees to the entry of a
forfeiture money judgment in the amount of $925,313.06, representing the value of
property subject to forfeiture for defendant's violation of Count 1 of the
Indictment. Defendant agrees that the forfeiture money judgment may be satisfied,
to whatever extent possible, from any property owned or under the control of the
defendant. To satisfy the money judgment, defendant explicitly agrees to the
forfeiture of any assets he has now, or may later acquire, as substitute assets under
21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the
forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise. The
Forfeiture Money Judgment shall be reduced by the net amount of proceeds
ultimately forfeited to the United States.

With respect to the Subject Property and forfeiture money judgment, the
defendant agrees to the entry of one or more orders of forfeiture of his interest in
such property and money judgment upon application by the United States at, or

17

any time before, his sentencing in this case. Defendant agrees that his interest in the Subject Property may be forfeited through these criminal proceedings or, in the discretion of the United States, a stipulation to lift the stay and enter a consent judgment entered in civil forfeiture proceedings pending before the court at Civil Docket No. 18-cv-12861 (EDMI), or (again, in the discretion of the United States) a stipulated dismissal of those civil proceedings as moot.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United State and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant acknowledges that he shall be personally responsible for any tax consequence and/or penalties associated with liquidation of the identified accounts. Defendant also acknowledges that any values stated above for any accounts are approximations and may have fluctuated between the date the values were obtained and the date the accounts are forfeited in accordance with this agreement.

Defendant also waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, right to have a jury to determine the forfeitability of his interest in

property subject to forfeiture, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The United States agrees to submit a recommendation and request to the U.S. Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section ("MLARS"), to remit or restore any forfeited funds to the victims in this case and apply the net forfeited funds to the defendant's restitution obligation. Defendant expressly acknowledges that any request to remit or restore forfeited funds may be denied by MLARS, which denial will not be subject to further review, and that no representations have been made to him by or on behalf of the U.S. Attorney's Office as to the likelihood that the request to MLARS will be granted.

In entering into this agreement with respect to forfeiture, the defendant also knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

**F.     Special Assessment**

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

**12.   Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

**13.   Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**14.    Remedies for Withdrawal, Breach, Rejection, or Vacatur**

If the defendant is allowed to withdraw his guilty plea(s) or breaches this

agreement, or if the Court rejects this agreement, or if the defendant's conviction

or sentence under this agreement is vacated, the government may reinstate any

charges against the defendant that were dismissed as part of this agreement and

may file additional charges against the defendant relating, directly or indirectly, to

any of the conduct underlying the defendant's guilty plea or any relevant conduct.

If the defendant has been permitted to plead guilty to a lesser-included offense, the

government may also reinstate any charges or file any additional charges against

the defendant for the greater offense, and the defendant waives his double-jeopardy

rights with respect to the greater offense. If the government reinstates any charges

or files any additional charges as permitted by this paragraph, the defendant waives

his right to challenge those charges on the ground that they were not filed in a

timely manner, including any claim that they were filed after the limitations period

expired.

**15.    Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for

any reason, he waives all of his rights under Federal Rule of Evidence 410, and the

government may use his guilty plea, any statement that the defendant made at his

guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**16.**     **Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**17.**     **Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

22

18.   **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the

United States Attorney's Office by 9 a.m. on May 3, 2023. The government may

withdraw from this agreement at any time before the defendant pleads guilty.

Dawn N. Ison
United States Attorney

Regina McCullough
Chief, HCF
Assistant United States Attorney

Alison Furtaw
Assistant United States Attorney

Wayne Pratt
Assistant United States Attorney

Dated: 5/2/2023

By signing below, the defendant and his attorney agree that the defendant

has read or been read this entire document, has discussed it with his attorney, and

has had a full and complete opportunity to confer with his attorney. The defendant

further agrees that he understands this entire document, agrees to its terms, has had

all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Mohammed Abdrabboh
Attorney for Defendant

_____
Fares Yasin
Defendant

Dated:  5/2/23

24